United States District Court
Middle District of Florida
Jacksonville Division

Case No.: 3:23-cv-983-BJD-LLL

LA TONYA RIGSBY,

    *Plaintiff*,

vs.

CHARTWELLS K12,

    *Defendant.*

_____/

## COMPLAINT & DEMAND FOR JURY TRIAL

Plaintiff LA TONYA RIGSGY ("Plaintiff" or "Ms. Rigsby"), files this complaint against Defendant CHARTWELLS K12 ("Defendant" or CHARTWELLS"), and states as follows:

1. Plaintiff brings this action for disability discrimination and retaliation based on a disability in violation of the Americans with Disability Act ("ADA"), U.S.C. § 12101, *et seq.*, and the Florida Civil Rights Act, Chapter 760, Florida Statutes ("FCRA").

2. Plaintiff is seeking compensatory damages and punitive damages.

## PARTIES

3. Plaintiff is an adult individual who works for Defendant in Duval County, Florida.

4. Defendant Chartwells is a Florida private organization that maintains a location and operates and conducts business in Duval County, Florida, and is therefore within the jurisdiction of the Court.

5. Plaintiff is a disabled female. At all times material, Plaintiff is protected by the FCRA and ADA because:

1

    a.    Plaintiff is a disabled employee who suffered discrimination and harassment because of her disability by Defendant; and

    b.    Plaintiff was discriminated against and suffered adverse employment action and subjected to an increasingly hostile work environment because of her disability,

6.    Defendant is at all material times an "employer" as defined by the ADA and by 760.02(7), Fla. Stat., as it employed more than fifteen (15) employees.

## JURISDICTION AND VENUE

7.    This Court has jurisdiction over Plaintiff's ADA claims pursuant to 28 U.S.C. § 1331 as they arise under 42 U.S.C. § 12101, et seq.

8.    This court has supplemental Jurisdiction over Plaintiff's FCRA as they arise out of the same set of operative facts and circumstances as her ADA claims.

9.    Plaintiff works for Defendant in Duval County, Florida, and therefore the proper venue for this case is the Jacksonville Division of the Middle District of Florida.

## CONDITIONS PRECEDENT

10.    On or about July 06, 2022, Plaintiff timely dual-filed a charge with the Equal Employment Opportunity Commission ("EEOC"), and the Fair Employment Practice Agency ("FEPA").

11.    On May 24, 2023, the EEOC emailed Plaintiff notification of the Notice of Right to Sue letter against the Defendant is available in the Plaintiff's EEOC file, giving Plaintiff the right to bring a civil action on her disability discrimination and retaliation claims within ninety (90) days of her receipt of the same.

12. More than one hundred-eighty (180) days have passed since the filing of the Plaintiff's FEPA claims, rendering Plaintiff's FEPA claims ripe for filing.

13. Plaintiff timely files this action within the applicable period of limitations against Defendant and has complied with all administrative prerequisites.

14. All conditions precedent to this action have been satisfied.

## FACTUAL ALLEGATIONS

15. Ms. Rigsby is currently employed by Chartwells as a foodservice worker/cashier and has been working since August 2021.

16. On January 20, 2022, Ms. Rigsby suffered a high blood glucose level disability that she suffers, specifically diabetes mellitus ("type 2 diabetes).

17. To address her disability, Ms. Rigsby was treated in a local hospital emergency room and became insulin dependent.

18. Ms. Rigsby's immediate supervisor, Annette Taylor, was informed of Ms. Rigsby's medical emergency and her absence from work.

19. Thereafter, Ms. Rigsby receives treatment from a licensed medical professional.

20. Occasionally, Ms. Rigsby would become fatigued. As a quick fix, Ms. Rigsby would sit down and or eat a piece of fruit between the students' lunch periods.

21. Ms. Taylor would tell Ms. Rigsby to find something to do.

22. To make sure Ms. Rigsby did not sit down, Ms. Taylor removed the chair and stool that sat near Ms. Rigsby's cash register and had Ms. Rigsby complete other tasks while everyone else was sitting or standing around and talking amongst themselves.

23. Ms. Rigsby went to Chartwell's human resources and met Gardenia Guzman and Belinda Bentley, the District Dinning Supervisor joined the meeting.

24. During the meeting, Ms. Rigsby voiced her concerns about not being able to take a short break between lunches when needed, being harassed, bullied, and humiliation.

25. At that time, Ms. Rigsby requested a transfer.

26. Ms. Guzman granted Ms. Rigsby the transfer.

27. Ms. Rigsby was told not to tell anyone about what was discussed in the meeting; and to put her complaint in writing for Ms. Guzman.

28. In February 2022, Ms. Rigsby experienced another high glucose level; and her daughter called Ms. Taylor to inform her of Ms. Rigsby's absence.

29. Upon Ms. Rigsby's return to work, Ms. Taylor cornered Ms. Rigsby in the walk-in refrigerator and began to scold her about having her daughter call in for her.

30. Ms. Taylor kept asking Ms. Rigsby if she was incapacitated and insisting that Ms. Rigsby should have called and not her daughter.

31. Ms. Rigsby tried to explain to Ms. Taylor about her condition; but she did not want to listen.

32. When Ms. Rigsby's blood glucose levels reach three hundred (300) or above, it is hard for her to concentrate and get her thoughts together.

33. On February 10, 2022, Ms. Rigsby's medical professional recommended that Ms. Rigsby be able to take a ten (10) to fifteen (15) minute break every three hours because of her disability diagnosis.

34. On February 11, 2022, Ms. Rigsby forwarded to Ms. Taylor the treating medical professional's written recommendation for reasonable, non-burdensome possible accommodation.

35. Immediately, Ms. Taylor told Ms. Rigsby that recommendation was not going to work because Ms. Rigsby would not be able to get any work done.

36. Ms. Taylor said she would forward the recommendation letter to human resources.

37. On February 16, 2022, Ms. Rigsby took her written complaint to Gardenia Guzman in human resources as discussed previously. While speaking with Ms. Guzman, Ms. Rigsby asked her about the transfer.

38. Ms. Guzman said she thought Ms. Rigsby was already at a new location and she would find out why the transfer had not been made.

39. Ms. Rigsby also asked Ms. Guzman if she had received the letter of recommendation from Ms. Rigsby's medical professional.

40. Ms. Guzman stated she had not received the letter.

41. At that time Ms. Rigsby gave her a copy of the letter.

42. Ms. Guzman read it and told Ms. Rigsby to personally give her any type of physician order that is that direct in instruction.

43. Once again, Ms. Guzman reassured Ms. Rigsby she would find out why the transfer had not been completed.

44. On March 3, 2022, in response to Ms. Rigsby's request for a short break, Ms. Rigsby was given a work time schedule.

45. After Ms. Rigsby looked at the time schedule, she told Ms. Taylor she did not need a short break every day, only when she began to feel fatigued, which is a sign that her blood sugar is beginning to drop.

46. Ms. Rigsby also told Ms. Taylor the time schedule would not work for a few reasons:

   a. The drop in Ms. Rigsby's blood glucose comes unexpectedly mainly between the first and second lunch periods.

   b. Ms. Rigsby was required to take her first break between 9:30 am and 9:45 am to be back before the first lunch period begins.

   c. The time for the afternoon break was scheduled for the same time Ms. Rigsby is expected to go home.

47. Ms. Taylor became defensive and stated Ms. Bentley told her Ms. Rigsby does not decide when to take her breaks.

48. Ms. Rigsby stated she guessed it is what it is and walked away.

49. That afternoon while Ms. Rigsby was cleaning the serving line, Ms. Taylor approached Ms. Rigsby and began to harass her about her break schedule.

50 Ms. Rigsby eventually voiced her dislike to Ms. Taylor's behavior towards her and she will be reporting Ms. Taylor's behavior to human resources.

51. At the end of Ms. Rigsby's shift, she went to Chartwells' office to speak with Ms. Guzman.

52. Instead, she was intercepted by Ms. Bentley, who ignored Ms. Rigsby's concerns for Ms. Taylor's behavior towards her and the timing of the afternoon break.

53. The following day Ms. Taylor was irate when she approached Ms. Rigsby and questioned her about the visit to Chartwells office the previous day.

54. Ms. Taylor also referred to the meeting Ms. Rigsby had with Ms. Guzman and Ms. Bentley.

6

55. Ms. Taylor was not supposed to know about the meeting until Ms. Rigsby was transferred.

56. The person that disclosed the contents of the meeting put Ms. Rigsby in harms reach.

57. For the days thereafter, Ms. Rigsby contacted Ms. Bentley multiple times to let her know Ms. Taylor was harassing her more than usual.

58. Days before spring break Ms. Rigsby called Ms. Bentley extremely upset with Ms. Taylor.

59. Ms. Bentley promised to transfer Ms. Rigsby once she found a replacement for her and a new location that needed help.

60. The day before spring break, Ms. Rigsby did not return to her assigned school.

61. After the spring break ended, Ms. Rigsby made attempts to contact Ms. Guzman by telephone to inform her why she had not reported back to work.

62. Not until Ms. Rigsby left a voice message on Ms. Guzman's telephone did Ms. Bentley contact Ms. Rigsby.

63. After Ms. Rigsby spoke to Ms. Bentley, she was able to reach Ms. Guzman on the telephone.

64. Ms. Rigsby informed Ms. Guzman that she did not return to work because she felt threatened by Ms. Taylor and she will not return to work at that location.

65. At that time, Ms. Guzman offered Ms. Rigsby a real transfer if she wanted it.

66. Ms. Rigsby had initially requested a transfer because of the unfair work practices of Ms. Taylor back in November when Will the Director of Operations asked Ms. Rigsby what would make her work experience at Chartwells better.

7

67. Will promised to work on the transfer for Ms. Rigsby as soon as they hire someone to take Ernestine's place in human resources.

68. In December, Ms. Rigsby saw Will again and inquired about the transfer.

69. Will's respond was that he will work on it because they just hired someone in human resources.

70. After Chartwells received Ms. Rigsby's EEOC complaint, her hours were cut because there were not enough students eating the school's meals.

71. Shortly after Ms. Rigsby's hours were cut, two new employees were hired at the same school Ms. Rigsby was working at.

72. The ADA and the Florida Civil Rights Act (FCRA) requires an employee to provide its disabled employees with reasonable accommodation, if such reasonable accommodation would allow that employee to perform the essential functions of his or her job unless doing so would impose an undue hardship.

73. Defendant failed to accommodate plaintiff's disability and related symptoms.

74. Defendant's actions are the exact type of unfair employment practice that the ADA and the FCRA were intended to prevent.

75. Defendant lacked a good faith basis for its actions.

76. Chartwells was aware of Ms. Rigsby's ADA and FCRA-protected medical condition and her need for accommodation.

77. Defendant, however, being aware of Plaintiff's disability discriminated against Plaintiff for requiring and requesting reasonable accommodation for same, resulting in retaliation for her requests for accommodation.

78. Ms. Rigsby is an individual with a disability who, with minimal reasonable accommodation, was fully capable of performing the essential functions of a food service worker/cashier position.

## COUNT I- DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABLITY ACT

79. Plaintiff realleges and adopts the allegations contained in paragraphs 1 through 78 of the complaint as if fully set forth in this Count.

80. The acts of Defendant, by and through its agents and employees, violated Plaintiff's rights against disability discrimination under the ADA.

81. The discrimination to which Plaintiff was subjected to was based on her disability or Defendant's perception of insignificant of the disability.

82, Plaintiff has suffered damages because of Defendants illegal conduct towards her.

83. The conduct of Defendant was so willful, wanton, and in reckless disregard of the statutory rights of the Plaintiff, as to entitle her to an award of punitive damages against Defendant, to defer it, and others, from such conduct in the future.

**WHEREFORE**, Plaintiff requests a judgement in her favor and against Defendant for her original compensatory damages, emotional distress damages, and punitive damages as well as her costs and such other relief as is deemed proper by this Court.

## COUNT II- DISABILITY DISCRIMINATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT

84. Plaintiff realleges and adopts the allegations contained in Paragraphs 1 through 78 of the Complaint as if fully set forth in this Court.

85. The acts of Defendant, by and through its agents and employees, violated Plaintiffs rights against disability discrimination under the Florida Civil Rights Act, Chapter 760, Florida Statues.

86. The discrimination to which Plaintiff was subjected was based on her disability.

87. Plaintiff has suffered damages because of Defendant's illegal conduct toward her.

88. The conduct of Defendant was so willful, wanton, and in reckless disregard of the statutory rights of plaintiff as to entitle her to an award of punitive damages against defendant, to deter it, and others from such conduct in the future.

**WHEREFORE**, Plaintiff requests a judgment in her favor and against Defendant for her actual and compensatory damages, emotional distress damages, and punitive damages, as well as her costs, and such other relief as is deemed proper by this Court.

## COUNT III- RETALIATION UNDER THE ADA BASED ON DISABILITY

90. Plaintiff reincorporates and adopts all allegations contained within Paragraph1 through 78, above as if fully set forth in this Count.

91. Plaintiff was ridiculed and harassed within close temporal proximity of her request for accommodation.

92. The conduct of the Defendant and its agents, and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to decrease wages, emotional pain and suffering, humiliation, mental anguish, and loss of enjoyment of life.

93. The conduct of Defendant was so willful, wanton, and in reckless disregard of the statutory rights of plaintiff, as to entitle her to an award of punitive damages against Defendant, to deter it and others, from such conduct in the future.

**WHEREFORE**, Plaintiff requests a judgment in her favor and against Defendant for her actual and compensatory damages, emotional distress damages and punitive damages as well as her costs, and such other and further relief as deemed proper by this court.

## COUNT IV

## RETALIATION UNDER THE FLORIDA CIVIL RIGHTS ACT

## BASED ON DISABILITY

94. Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1 through 78 above, as if fully set forth in this Court.

95. Plaintiff's request for accommodation constitutes protected activity under FCRA.

96. Plaintiff was harassed and ridiculed as a direct result of her requesting reasonable accommodation for her disability.

97. Plaintiff's request for accommodation, and the ridicule and harassment she sustained were casually related.

98. The conduct of Defendant and its agents and employees proximately, directly, and foreseeably injured Plaintiff, including but not limited to, decreased wages, emotional pain and suffering, humiliation, mental anguish, lost of enjoyment of life and other nonpecuniary losses.

99. The conduct of Defendant was so willful, wanton, and in reckless disregard of the statutory rights of Plaintiff as to entitle her to an award of punitive damages against Defendant to deter it, and others from such conduct in the future.

100. Plaintiff has no plain, adequate or complete remedy at law for the actions of Defendant, which have caused irreparable harm.

**WHEREFORE**, Plaintiff requests a judgment in her favor and against Defendant for her actual compensatory damages, including emotional distress damages, and punitive damages as well as her costs, and other and further relief as deemed proper by this Court.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by Jury on all issues so triable.

Dated this 21st day of August 2023

Respectfully Submitted,

By *(signature)*
La Tonya Rigsby
2315 Westmont Street
Jacksonville, FL 32207
Telephone: (972) 940=1888

*Plaintiff*